**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**CARRIE E. D.,**
o/b/o **M.A.B.,**

**Plaintiff,**

**5:20-cv-874 (GLS)**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

---

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:**<br>Olinsky Law Group<br>250 South Clinton Street<br>Ste 210<br>Syracuse, NY 13202 | HOWARD D. OLINSKY, ESQ. |
| **FOR THE DEFENDANT:**<br>HON. CARLA B. FREEDMAN<br>United States Attorney<br>100 South Clinton Street<br>Syracuse, NY 13261 | TIMOTHY SEAN BOLEN<br>Special Assistant U.S. Attorney |
| Anatoly Shnaider<br>Regional Chief Counsel<br>Office of Regional Counsel, Region II<br>625 JFK Building<br>15 New Sudbury Street<br>Boston, MA 02203 | |

**Gary L. Sharpe**
**Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Carrie E. D. o/b/o M.A.B. challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Carrie's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

## II. Background

Carrie applied for SSI benefits o/b/o M.A.B. on April 6, 2017, alleging a disability beginning January 10, 2011. (Tr.[1] at 79, 164-69.) When her application was denied, (Tr. at 90-94), she requested a hearing before an Administrative Law Judge (ALJ), (Tr. at 95), which was held on April 5, 2019, (Tr. at 41-78). On May 25, 2017, the ALJ issued a decision denying Carrie's claim for SSI benefits, (Tr. at 10-40), which became the Commissioner's final determination upon the Appeals Council's denial of review, (Tr. at 1-6).

---

[1] Page references preceded by "Tr." are to the administrative transcript. (Dkt. No. 11.)

Carrie commenced the present action on August 3, 2020, by filing her complaint, wherein she seeks review of the Commissioner's determination. (Compl.) Thereafter, the Commissioner filed a certified copy of the administrative transcript. (Dkt. No. 11.) Each party filed a brief seeking judgment on the pleadings. (Dkt. Nos. 16, 19.)

## III. Contentions

Carrie contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence.[2] (Dkt. No. 16 at 9-22.) Specifically, Carrie claims that the ALJ erred by improperly evaluating the opinions of Dr. Catalin Butunoi,[3] and Dr. Timothy Dempsey. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (Dkt. No. 19 at 7-21.)

## IV. Facts

The court adopts the parties' factual recitations to the extent they are

---

[2] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir.1990) (internal quotation marks and citations omitted).

[3] The ALJ's decision refers to this individual as Dr. "Butunol." (Tr. at 23.) The court will refer to this individual as "Dr. Butunoi," which, from the administrative transcript, appears to be the accurate spelling of her name. (Tr. at 955.)

consistent with the statement of facts contained in the ALJ's decision and supported by the medical record. (Tr. at 16-35; Dkt. No. 16 at 2-9; Dkt. No. 19 at 6.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[4] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-*3 (N.D.N.Y. Mar. 19, 2008). Similarly, for a full discussion of the three-step analysis used by the Social Security Administration to determine whether individuals under the age of eighteen are disabled, the court refers the parties to its previous opinion in *Shatraw ex rel. K.C.Y., III, v. Astrue*, No. 7:11-cv-13, 2012 WL 589667, at *1 (N.D.N.Y. Feb. 22, 2012).

## VI. Discussion

### A. Dr. Butunoi's Opinion

[4] The § 405(g) standard of review in DIB proceedings brought under Title II of the Act also applies to SSI proceedings under Title XVI of the Act. *See* 42 U.S.C. § 1383(c)(3).

Carrie argues that the ALJ improperly failed to explain with the required specificity how she considered the supportability and consistency of Dr. Butunoi's opinion, as required by 20 C.F.R. § 416.920c(b)(2). (Dkt. No. 16 at 9-14, 17-19.) Carrie further asserts that there was an "objective basis for [Dr. Butunoi's] opinion," supported in part by the subjective complaints of M.A.B. and Carrie. (Dkt. No. 16 at 14-16.) Finally, Carrie contends that the ALJ improperly "focus[ed] . . . on [Dr. Butunoi's] findings [of] lack of delusions or hallucinations, lack of memory deficits or normal thought content," and failed to consider the impact of a "structured setting" on M.A.B.'s limitations. (*Id.* at 14-16, 18.) The Commissioner argues that the ALJ applied the correct legal standard and substantial evidence supported her decision to accord "[l]ittle persuasiveness" to Dr. Butunoi's opinion. (Dkt. No. 19 at 8-16 (quoting Tr. at 23).)

"An ALJ must articulate in . . . her determination how persuasive . . . she finds all of the medical opinions." *Daniel E. v. Kijakazi*, No. 6:20-CV-1270, 2022 WL 602533, at *4 (N.D.N.Y. Mar. 1, 2022) (citing 20 C.F.R. § 416.920c(b)). In doing this, an ALJ will consider the following factors: (1) "supportability"; (2) "consistency"; (3) "relationship with the claimant," which includes the "length of the treatment relationship," the

"frequency of examinations," the "purpose" and "extent of the treatment relationship," and the "examining relationship"; (4) "specialization"; and (5) any "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 416.920c(a), (c); *see Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021). An ALJ must "explain how [she] considered the supportability and consistency factors" in her decision and "may, but [is] not required to, explain how [she] considered the [additional] factors." 20 C.F.R. § 416.920c(b)(2); *see Jacqueline*, 515 F. Supp. 3d at 8. In explaining how she considered the supportability and consistency factors, an ALJ must "point[] to specific evidence in the record supporting those findings." *Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313, 2021 WL 706645, at *8 (N.D.N.Y. Feb. 22, 2021) (internal quotation marks and citation omitted); *see* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5,858 (Jan. 18, 2017), 2017 WL 168819 (stating that the articulation requirement of 20 C.F.R. § 416.920c is to "allow a subsequent reviewer or a reviewing court to trace the path of an [ALJ]'s reasoning").

Relevant here, Dr. Butunoi opined that M.A.B. had a marked loss in

"attending and completing tasks."[5] (Tr. at 953.) The ALJ accorded "[l]ittle persuasiveness" to Dr. Butunoi's opinion, noting that "Dr. Butuno[i]'s opinion is not supported by the few chronically positive clinical findings on mental status examinations" of M.A.B. (Tr. at 23.) The ALJ further determined that support for Dr. Butunoi's opinion appeared to come from subjective complaints from Carrie and M.A.B. (*Id.*) Finally, the ALJ noted that Dr. Butunoi's opinion was inconsistent with other evidence in the record, including "the opinions of the State agency medical consultant and consultative examiners." (*Id.*; Tr. at 26, 27.) Because the ALJ "point[ed] to specific evidence in the record," and this court was able to "trace the path of [her] reasoning," the ALJ's supportability and consistency analysis here satisfies 20 C.F.R. § 416.920c(b)(2). *See Raymond*, 2021 WL 706645, at *8; *see also* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5,858 (Jan. 18, 2017), 2017 WL 16881.

The ALJ's determination was also supported by substantial evidence. As the ALJ noted, Dr. Butunoi's treatment notes did not support her opinion

[5] The ALJ determined that M.A.B. had a marked loss in "acquiring and using information" and less than a marked loss in all other domains of functioning. (Tr. at 24-35.) If it was determined, based on Dr. Butunoi's opinion, or otherwise, that M.A.B. had a marked loss in "attending and completing tasks," it would result in a finding of disability. *See* 20 C.F.R § 416.926a(d).

concerning M.A.B.'s allegedly marked limitations. (Tr. at 23.) The majority of Dr. Butunoi's notes stated that M.A.B. often appeared cooperative and alert, his orientation, attention, and concentration were all within normal limits, his memory was intact, his mood was within normal limits and his affect was appropriate, his thought processes and content were appropriate, his insight and judgment were fair, and his impulse control was either average or sometimes below average. (Tr. at 463-64, 470-71, 478-79, 489-90, 496-97, 503-04, 531-32, 718-19, 726-27, 734-35, 741-42, 752-53, 759-60, 766-67, 773-74, 784-85, 791-92, 810-11, 817-18, 827-28, 834-35, 841-42, 851-52, 858-59, 868-69, 875-76, 882-83.)

The ALJ's determination regarding the inconsistency of Dr. Butunoi's opinion was also supported by substantial evidence. As mentioned by the ALJ, (Tr. at 22), Dr. M. Puttanniah, after reviewing the evidence in the case, concluded that M.A.B. had less than marked limitation in attending and completing tasks, (Tr. at 80-86). Further, and also noted by the ALJ, (Tr. at 22-23), Dr. Jeanne Shapiro evaluated M.A.B. and determined that, among other things, M.A.B. "ha[d] no limitations in attending, understanding, and following simple instructions and directions," or in

"completing age appropriate tasks." (Tr. 562.[6]) The ALJ also compared Dr. Butunoi's opinion to other evidence in the record, for example that M.A.B.'s "teacher noted that the claimant had no 'serious' or 'very serious' problems in . . . carrying out instructions and focusing long enough to finish an assigned activity or task." (Tr. 27, 215, 281-82.) Carrie's assertion that her and M.A.B.'s subjective complaints indicated that there was an "objective basis for [Dr. Butunoi's] opinion," does not invalidate the fact that the ALJ's determination was supported by substantial evidence.[7] *See*

[6] The court is not persuaded by Carrie's argument that relying on Dr. Shapiro's opinion for this purpose was erroneous because Dr. Shapiro's testing was performed in a "structured setting." (Dkt. No. 16 at 18.) The regulations do not appear to contemplate that a consultative examination is a "structured setting." 20 C.F.R. § 416.924a(b)(5)(iv)(B) (explaining that a structured setting "may be [a claimant's] own home in which family members or other people . . . make adjustments to accommodate [their] impairment(s)," a claimant's "classroom at school, whether it is a regular classroom in which [they] are accommodated or a special classroom," or "a residential facility or school where [they] live for a period of time"). Further, to the extent Carrie argues that the ALJ's determination was not supported by substantial evidence for failing to address the impact of a structured setting on M.A.B.'s limitations, (Dkt. No. 16 at 18), the court is equally unpersuaded. *See St. Louis ex rel. D.H. v. Comm'r of Soc. Sec.*, 28 F. Supp. 3d 142, 152 (N.D.N.Y. 2014) (finding, where the ALJ "referenced [the claimant's] IEP, need for support in school[,] and status as a special education student," as well as evaluations by his special education teachers, that there was "no basis for concluding that the ALJ failed to consider the impact of [claimant]'s structured educational environment on his limitations"); (Tr. at 21 ("With respect to the allegations of learning delay, [M.A.B.] was recommended for various school accommodations or interventions . . . . his current symptoms appear to respond to in-class accommodations from teachers without the need for formal special education services.").

[7] Carrie's argument that it was improper for the ALJ to "focus . . . on [Dr. Butunoi's] findings [of a] lack of delusions[,] . . . hallucinations, lack of memory deficits[,] or normal thought content," (Dkt. No. 16 at 14-16), is also without merit. After careful review of the ALJ's decision it is not apparent to the court that the ALJ relied on these findings at all in making her determination with respect to Dr. Butunoi's opinion.

*Gates v. Astrue*, 338 F. App'x 46, 49 (2d Cir. 2009) (finding that an ALJ "acted within h[er] discretion in according [a] doctor[']s[] reports little weight" because the ALJ determined the doctor's "assessment was based on . . . [claimants] subjective complaints" and "was internally inconsistent"). Accordingly, the ALJ's determination with respect to Dr. Butunoi's opinion is supported by substantial evidence and free from legal error.

**B. <u>Dr. Dempsey's Opinion</u>**

Carrie argues that the ALJ erred by failing to consider the opinion of Dr. Dempsey because it "predated the period at issue," even though the ALJ relied on other evidence from that period and was required by regulation to "develop [M.A.B.'s] complete medical history." (Dkt. No. 16 at 20-22.) Carrie further asserts that excluding Dr. Dempsey's opinion was improper because she was required to articulate how persuasive she found all of the medical opinions before her. (*Id.* at 21.) Finally, Carrie maintains that the failure to consider Dr. Dempsey's opinion was erroneous because the opinion "contemplate[d] a structured environment," the effects of which an ALJ is required to consider. (*Id.* at 22.) The Commissioner contends that substantial evidence supports the ALJ's consideration of Dr. Dempsey's opinion.

An ALJ must accord a level of persuasiveness to all of the proffered medical opinions. *See Daniel*, 2022 WL 02533, at *4 (citing 20 C.F.R. § 416.920c(b)). Regarding child claims, "[a] medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the [six domains of functioning]." 20 C.F.R. § 416.913(a)(2).

Pursuant to 20 C.F.R. § 416.912(b)(1), an ALJ has a responsibility to "develop [a] complete medical history for at least the [twelve] months preceding [filing] unless there is a reason to believe that development of an earlier period is necessary."

The court is not persuaded by Carrie's argument that the ALJ's failure to articulate how persuasive she found the opinion of Dr. Dempsey constituted legal error because 20 C.F.R. § 416.920c(b) requires "an ALJ [to] articulate how persuasive they find all of the medical opinions . . . not just the ones they think are relevant." (Dkt. No. 16 at 21.) The ALJ was not required to accord pervasiveness to Dr. Dempsey's opinion because it does not describe M.A.B.'s limitations or restrictions in the six domains of functioning. *See* 20 C.F.R. § 416.913(a)(2); (Tr. at 959-67).

Further, and although Carrie contends otherwise, (Dkt. No. 16 at 21-22), the ALJ properly used Dr. Dempsey's report to develop M.A.B.'s complete medical history, along with the other evidence that "predated the period at issue," by noting that Dr. Dempsey's report demonstrated that M.A.B. was "recommended for various school accommodations or interventions following [an] exam . . . in January 2016," (Tr. at 21, Tr. 959-67.) The ALJ then expressly contrasted that evidence with M.A.B.'s current symptoms. (Tr. at 21.)

Finally, Carrie's argument that the ALJ's "exclusion . . . of the opinion of Dr. Dempsey [wa]s harmful, as it contemplate[d] a structured environment," (Dkt. No. 16 at 22), is without merit. *See supra* note 6 (determining that the ALJ adequately considered the impacts of a structured setting on M.A.B.'s limitations). Accordingly, the ALJ's determination with respect to Dr. Dempsey's opinion is supported by substantial evidence and free from legal error.

## C. Remaining Findings and Conclusions.

After careful review of the record, the court affirms the remainder of the ALJ's decision, as it is supported by substantial evidence and free from legal error.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the Commissioner's motion for judgment on the pleadings (Dkt. No. 19) is **GRANTED**; and it is further

**ORDERED** that the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED** that the complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that Carrie's motion for judgment on the pleadings (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 25, 2022
Albany, New York

Gary L. Sharpe
U.S. District Judge